**In re FUGAZY EXPRESS, INC., Debtor.**

**Zachary SHIMER, Chapter 7 Trustee of Fugazy Express, Inc., and Metromedia Company, Plaintiffs,**

v.

**William D. FUGAZY, Fugazy Limousine, Ltd. f/k/a R.D.F. Limousine Corp. and Roy Fugazy, Defendants.**

**Bankruptcy No. 86 B 11206 (BRL). Adv. No. 87–5883A.**

United States Bankruptcy Court, S.D. New York.

Sept. 29, 1993.

Shea & Gould, New York City by Mary Gail Gearns, for Metromedia Co.

Ohrenstein & Brown, New York City by Warren R. Graham, for Roy Fugazy and Fugazy Limousine, Ltd.

Denise L. Savage, New York City, for William S. Fugazy.

## MEMORANDUM DECISION ON DEFENDANTS' MOTION FOR PARTIAL VACATUR OF DECISION AND ORDER

BURTON R. LIFLAND, Chief Judge.

Roy Fugazy and Fugazy Limousine Ltd., joined by William D. Fugazy,[1] (collectively, the "Defendants") seek to vacate that portion of a Memorandum Decision, *Shimer v. Fugazy (In re Fugazy Express, Inc.)*, 114 B.R. 865 (Bankr.S.D.N.Y.1990), *aff'd*, 124 B.R. 426 (S.D.N.Y.1991), *appeal dismissed*, 982 F.2d 769 (2d Cir.1992), (the "Memorandum Decision"), and a corresponding Order, dated June 20, 1990, (the "June 20 Order") which award attorneys' fees and costs to plaintiffs Zachary Shimer, the Chapter 7 trustee, and Metromedia Company.

## I. BACKGROUND

On July 8, 1986 Fugazy Express, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330 (1993) (the "Code"). The Debtor sold and serviced independent livery and limousine franchises which used the Fugazy name.[2] The Debtor

---

1. William D. Fugazy is a debtor in this Court whose discharge, as to the plaintiff Metromedia Company's $46 million claim, has recently been denied based upon acts and conduct which are the subject of this adversary proceeding and those cases and proceedings listed in footnote 2, *supra*. *Metromedia Company v. William D. Fu-*

*gazy (In re William D. Fugazy)*, 157 B.R. 761 (Bankr.S.D.N.Y.1993) (Schwartzberg, J.).

2. The facts set forth, *supra*, have been presented in several published decisions of this Court, the District Court for the Southern District of New York (the "District Court") and the Court of

provided, among other things, radio dispatching services to the franchisees. Transmissions were broadcast over various radio frequencies for which the Debtor had obtained the requisite licenses and permits from the Federal Communications Commission (the "FCC").

At all relevant times prior to the March 1987 conversion of the Debtor's case from a proceeding under chapter 11 to one under chapter 7 of the Code, the Debtor was controlled by William D. Fugazy, the chairman of its board of directors. In December 1984, William Fugazy approached John W. Kluge ("Kluge") and offered to sell the Debtor to Metromedia, Inc.,[3] a communications and entertainment conglomerate which Kluge controlled. In March 1985, Metromedia and the Debtor entered into an agreement pursuant to which Metromedia acquired an eighty percent (80%) interest in the Debtor in exchange for Metromedia making certain capital contributions and assuming certain of the Debtor's obligations.

As previously noted, the Debtor filed a voluntary petition for reorganization under Chapter 11 of the Code in July 1986, and the case was converted to a chapter 7 liquidation in March 1987. Zachary Shimer was appointed interim trustee, and Mr. Shimer (the "Trustee") subsequently qualified as the permanent trustee.

In June 1987, the Trustee, with the assistance of court appointed professionals, conducted an auction of certain of the Debtor's property. At the auction, Metromedia was the only bidder on the Debtor's interest in certain FCC licenses and permits. The Trustee subsequently transferred and assigned all of the Debtor's right, title and interest in such FCC licenses and permits to Metromedia for $500.

At some point after the Trustee was appointed but prior to the auction, William Fugazy assigned and transferred to Fugazy Limousine Ltd., formerly known as R.D.F. Limousine Corp. ("Limousine"), a certain radio frequency license and permit of the Debtor's which used the call sign KXY 610 (the "License"). Although William Fugazy purported to act in his capacity as chairman of the Debtor's board of directors, the Trustee had been appointed prior to the transfer, thereby divesting William Fugazy of authority to act on the Debtor's behalf. This transfer occurred without court authorization in contravention of §§ 362 and 363 of the Code, and the record is devoid of any evidence which indicates that the Debtor received any consideration for this assignment and transfer. In addition, Limousine's controlling shareholder was Roy Fugazy, William Fugazy's son and an officer of the Debtor prior to the aforementioned Metromedia transaction. Roy Fugazy, in bad faith, accepted the unauthorized transfer of the License from his father with knowledge of the Debtor's bankruptcy proceeding and used the License in the conduct of Limousine's business. *See Metromedia*, 753 F.Supp. at 95; *Shimer*, 114 B.R. at 867, 875.

In January 1987, unknown to the Plaintiffs, Limousine requested FCC approval of the transfer of the License from the Debtor to Limousine. The application was returned for lack of information and was subsequently resubmitted. In April 1987, the FCC consented to the assignment of the License and issued a new license in Limousine's name.

Appeals for the Second Circuit, respectively. Familiarity with these decisions is assumed. *See Shimer v. Fugazy (In re Fugazy Express, Inc.)*, 114 B.R. 865 (Bankr.S.D.N.Y.1990), *aff'd*, 124 B.R. 426 (S.D.N.Y.1991), *appeal dismissed*, 982 F.2d 769 (2d Cir.1992); *Metromedia v. Fugazy*, 753 F.Supp. 93 (S.D.N.Y.1990), *aff'd*, 983 F.2d 350 (2d Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993); *see also In re William D. Fugazy*, 157 B.R. 761. Although the Defendants claim that their request for relief here is a limited one, a review of the underlying facts and aforementioned proceedings reveals that such request is inextricably intertwined with the sum and substance of those proceedings referred to in this footnote.

3. Metromedia, Inc. was succeeded in 1986 by Metromedia Company, a non-corporate enterprise, 97.5% of which is owned by John Kluge. To avoid confusion both companies are referred to as "Metromedia".

The foregoing facts served as the predicate for two separate actions instituted in the Bankruptcy and District Courts, respectively.

## A. The Bankruptcy Court Action

In August 1987, Metromedia and the Trustee (collectively, the "Plaintiffs") commenced this adversary proceeding against the Defendants, seeking, *inter alia*, a declaration that the transfer of the License to Limousine was null and void, and an accounting of any proceeds that accrued to Limousine or William Fugazy as a result of this unauthorized transfer. Shortly thereafter, William Fugazy signed a consent order in which he admitted that he "acted without authority" in purporting to transfer the License to Limousine. Consent Order, dated September 10, 1987, at 1.

During the pendency of this adversary proceeding, Metromedia petitioned the FCC to void the purported transfer of the License to Limousine on the ground that the License had been unlawfully obtained. The FCC refused to act on such request, finding that the License had been "canceled" because the License had lapsed for lack of use while still in the Debtor's hands. *Shimer*, 982 F.2d at 773 (quoting FCC Letter, dated October 26, 1988). Roy Fugazy and Limousine, relying primarily upon the FCC's ruling, moved for summary judgment in this adversary proceeding. The Plaintiffs responded by cross-moving for summary judgment and the imposition of sanctions against all Defendants. William Fugazy also moved for summary judgment against the Plaintiffs.

The Plaintiffs' motions for summary judgment were granted and the Defendants' motions were denied. *Shimer*, 114 B.R. 865. This Court concluded that the FCC's decision did not affect the License's status as property of the estate, and that William Fugazy's conduct constituted a clear violation of §§ 362(a)(3) and 549(a) of the Code. The aforementioned acts of William and Roy Fugazy demonstrated that there was "serious misconduct by the Debtor through its former Chairman together with connivance by a willing transferee [Roy Fugazy] in a less than arms-length transaction." *Id.* at 875.

In fashioning remedies for these egregious violations, this Court looked to §§ 362(h), 549 and 550 of the Code and New York State law. Focusing to a degree, but not exclusively, upon § 362(h) of the Code, this Court imposed sanctions which, *inter alia*, required William Fugazy to reimburse the Trustee for one-third of the Trustee's costs and attorneys' fees. Roy Fugazy and Limousine were directed to reimburse the Plaintiffs' for the balance of such costs and fees.[4] *Id.* at 876; June 20 Order at 4. Roy Fugazy and Limousine were further ordered to account for any and all revenue attributable to their use of the License. *Id.* The Defendants appealed to the District Court, which affirmed the June 20 Order in a decision dated February 25, 1991. *Shimer*, 124 B.R. at 426.

In March 1991, the Defendants moved before the District Court for leave to reargue the District Court's affirmance solely with respect to the award of attorneys' fees and costs. *See* Defendants' Notice of Motion for Reargument; Transcript of June 14, 1993 Hearing at 14, 25. In an unrelated matter, on December 10, 1990, the Court of Appeals for the Second Circuit had held that sanctions may be imposed under § 362(h) of the Code when the Debtor is a natural person, but not when the Debtor is a corporation. *Maritime Asbestos Legal Clinic v. LTV Steel (In re Chateaugay Corp.)*, 920 F.2d 183 (2d Cir.1990) ("Maritime"). The Defendants, pointing to the corporate status of the Debtor, claimed an entitlement to a rehearing because of this intervening change in the alleged controlling case law. The District Court denied the Defendants' motion for reargument without opinion. Memorandum Endorsement of Notice of Motion for Reargument, dated January 8, 1992.

---

**4.** This Court has not made a final determination as to the amount of attorneys' fees to be awarded. The Plaintiffs have requested in excess of $300,000 and the Defendants have filed objections thereto.

The Defendants' appeal of the District Court's affirmance of the June 20 Order was dismissed for lack of appellate jurisdiction. *Shimer*, 982 F.2d at 777. The Second Circuit ruled that the June 20 Order is an interlocutory, as opposed to final, order, because it did not "completely resolve all of the issues pertaining to a discrete claim," including, for example, the court-ordered accounting. *Id.* at 776.

## B. The District Court Action

Soon after the Debtor filed its chapter 11 petition, Metromedia commenced an action in the District Court against William Fugazy, Roy Fugazy and various companies that were owned or controlled by William Fugazy (collectively, the "District Court Defendants"). Metromedia alleged, *inter alia,* that the District Court Defendants had misrepresented the Debtor's financial condition during the course of, *inter alia,* negotiations with respect to the aforementioned March 1985 Metromedia transaction. Metromedia asserted that the District Court Defendants had violated the Securities Exchange Act of 1934, 15 U.S.C. §§ 78a–7811, and the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961–1968. RICO imposes civil liability upon those who cause injury through a "pattern of racketeering activity." *Id.* §§ 1962, 1964. "Racketeering activity" includes "any offense involving fraud connected with a case under title 11 [the Bankruptcy Code] [.]" *Id.* § 1961(1)(D).

The District Court held that the unauthorized transfer of the License constituted bankruptcy fraud and that the District Court Defendants were collaterally estopped from denying such fraud by the findings of fact made by this Court in *Shimer*, 114 B.R. at 874. Accordingly, the District Court instructed the jury to find that bankruptcy fraud had been committed. It remained for the jury to decide whether such fraud was part of a "pattern of racketeering activities." The jury so found. *Metromedia*, 753 F.Supp. at 95; *In re William D. Fugazy*, 157 B.R. at 764.

The District Court Defendants were found guilty of both RICO and securities fraud, and were assessed with damages of over $15 million, jointly and severally. A judgment of over $46 million, pursuant to RICO's provision for treble damages, was also entered solely against William Fugazy. The District Court Defendants' appeal to the Second Circuit was unsuccessful, and the Supreme Court denied certiorari. *Metromedia v. Fugazy*, 753 F.Supp. 93 (S.D.N.Y.1990), *aff'd*, 983 F.2d 350 (2d Cir. 1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2445, 124 L.Ed.2d 662 (1993).

## II. Motion for Vacatur

Roy Fugazy and Limousine, joined by William Fugazy, *see* Transcript of June 14, 1993 Hearing at 24, have moved for vacatur of the Memorandum Decision and June 20 Order to the extent the Decision and Order award attorneys' fees and costs to the Plaintiffs. The Defendants argue that as § 362(h) of the Code was the sole basis for this award and the Debtor is a corporation, partial vacatur is mandated by *Maritime.* The Plaintiffs respond, *inter alia,* that the District Court's denial of the Defendants' motion for reargument is the law of the case and is therefore controlling. The Plaintiffs also correctly argue that this Court did not rely solely on § 362 in determining the relief to be granted.

■ At the outset, it is important to stress that the Defendants' motion rests on a misconception; namely, that attorneys' fees and costs were awarded pursuant *solely* to § 362(h) of the Code. Although this Court considered § 362(h) in crafting the award of attorneys' fees and costs, such focus must be viewed within the larger context of providing a broad-based remedy for the "invalid postpetition transfer of a corporate asset." *Official Committee of Subordinated Bondholders v. Integrated Resources, Inc. (In re Integrated Resources, Inc.)*, 3 F.3d 49, 52 (2d Cir.1993). As previously noted, this Court, relying upon §§ 549 and 550 of the Code and New York state law, directed Roy Fugazy and Limousine to file an "accounting detailing all revenues attributable to their use of the License." *Shimer*, 114 B.R. at 876. The award of attorneys' fees and costs is inte-

grally related to, and inseparable from, this accounting. For as noted in the Memorandum Decision:

The continued unwarranted use of an asset of the Debtor by the business of a son of the former Chairman makes sanctions appropriate in this case. Roy Fugazy's and Limousine's knowing and willful use of the License will result in damages being assessed against them, including costs, attorneys' fees, and damages based on an accounting of the revenue received as a result of the unauthorized use of the License.

*Shimer*, 114 B.R. at 865. Thus, the Memorandum Decision indicates that both remedies were based upon the same factual predicate, and it is worth noting that the leading bankruptcy commentator suggests that § 550 of the Code provides the basis for an award of attorneys' fees and costs. 4 L. King *Collier on Bankruptcy*, ¶ 550.02 at 550–9 (15th ed. 1990). (In discussing § 550, noting that "[a]s under prior law the bankruptcy court should exercise its equitable powers to award the trustee interest and costs when appropriate."); *cf. In re Ace Fruit & Produce Co.*, 49 F.Supp. 986, 990 (S.D.N.Y.1943) (In Bankruptcy Act case, district court upheld award of "costs and disbursements" to trustee who had brought preference action.) This understanding of the basis and background for the award of attorneys' fees and costs provides a foundation from which to consider the Defendants' motion for partial vacatur of the Memorandum Decision and June 20 Order.

■ A court enjoys broad, but not boundless, discretion to reconsider its interlocutory orders. *Tri–Star Pictures v. Columbia Pictures Industries*, 1992 WL 296314, *5 1992 U.S.Dist. LEXIS 15232 at *14 (S.D.N.Y. Oct. 6, 1992); *see also Grand Traverse Development Co. v. Board of Trustees (In re Grand Traverse Development Co.)*, 150 B.R. 176, 184–85 (Bankr. W.D.Mich.1993). "The 'power to reconsider and modify ... prior interlocutory rulings is informed by the second branch of the law of the case doctrine ... [which requires] that when a court has ruled on an issue, that decision should generally be adhered to ... in subsequent stages of the same case.'" *Tri–Star*, 1992 WL 296314, *2, 1992 Lexis 15232, at *7 (quoting *Arizona v. California*, 460 U.S. 605, 618, 103 S.Ct. 1382, 1391, 75 L.Ed.2d 318 (1983)). It is well settled in the Second Circuit that "[t]he major grounds justifying reconsideration [of a prior ruling] are 'an intervening change in controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Doe v. New York City Dep't of Social Services*, 709 F.2d 782, 789 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983) (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478, at 790 (1981)) (other citations omitted); *see also U.S. v. Adegbite*, 877 F.2d 174, 178 (2d Cir.), *cert. denied*, 493 U.S. 956, 110 S.Ct. 370, 107 L.Ed.2d 356 (1989). Although the Defendants assert that there has been an intervening change in the controlling law, and suggest that the June 20 Order is based upon a clearly erroneous interpretation of the law such that enforcement of the Order would lead to a manifest injustice, an examination of the foregoing facts and applicable law reveals that neither of these criteria are present.

The Defendants' argument that *Maritime* represents an intervening change in the controlling law is not well founded. As previously noted, this Court's Memorandum Decision was issued without the benefit of the Second Circuit's subsequent *Maritime* decision. After the District Court affirmed the Memorandum Decision and June 20 Order, the Defendants sought reargument before the District Court with respect to the award of attorneys' fees and costs. The Defendants predicated their request for relief upon *Maritime*. The District Court denied the Defendants' motion, and it is undisputed that the controlling law has not changed since that point. As the following discussion indicates, the Defendants have failed to grant sufficient weight to the District Court's denial of their post-*Maritime* motion and application of the first branch of the law of the case doctrine.

■ The Second Circuit has repeatedly instructed that the law of the case doctrine's first branch means that " '[w]hen an appellate court has once decided an issue, the trial court, at a later stage of the litigation, is under a duty to follow the appellate court's ruling on that issue.' " *Doe,* 709 F.2d at 788 (quoting *United States v. Cirami,* 563 F.2d 26, 32 (2d Cir.1977)) (other citations omitted); *see also Liona Corp. v. PCH Associates (In re PCH Associates),* 949 F.2d 585, 592 (2d Cir.1991) (" 'Law of the case rules have developed to maintain consistency and avoid reconsideration of matters once decided during the course of a single continuing lawsuit.' ") (quoting 18 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4478, at 788 (1988)). As previously noted, the Defendants have already requested that the District Court revisit its affirmance of the award of attorneys' fees and costs in light of *Maritime,* and the District Court denied such request. Thus, it is the law of the case that based upon the record before the District Court the award of attorneys' fees and costs is consistent with *Maritime*'s prohibition on awarding sanctions under § 362(h) of the Code when the Debtor is a corporation.

■ The Defendants assert, contrary to well settled authority in this circuit, that the District Court's denial of their motion for reargument does not constitute the law of the case because that decision was issued without opinion. The Second Circuit has repeatedly instructed that the law of the case doctrine applies "to issues that have been decided 'either expressly or by necessary implication.' " *Doe,* 709 F.2d at 788 (quoting *Munro v. Post,* 102 F.2d 686, 688 (2d Cir.1939)) (other citations omitted); *see also Heathcoat v. Potts,* 905 F.2d 367, 371 (11th Cir.1990) ("the law is clear, however, that the law of the case doctrine 'comprehends things *decided by necessary implication* as well as those decided explicitly.' ") (quoting *Wheeler v. City of Pleasant Grove,* 746 F.2d 1437, 1440 (11th Cir.1984) (per curiam) (emphasis in original)) (other citation omitted).

The Defendants' motion for reargument was premised upon *Maritime,* and "[t]he only proper ground on which a party may move to reargue an unambiguous order is that the court has overlooked 'matters or controlling decisions' which, had they been considered, might reasonably have altered the result reached by the court." *Adams v. U.S.,* 686 F.Supp. 417, 418 (S.D.N.Y.1988) (citing *Bozsi Limited Partnership v. Lynott,* 676 F.Supp. 505, 509 (S.D.N.Y.1987) (other citations omitted)); *see also id.* ("the standard for granting motions to reargue is 'strict in order to disuade repetitive arguments on issues that have already been considered fully by the court.' ") (quoting *Caleb & Co. v. E.I. Dupont de Nemours & Co.,* 624 F.Supp. 747, 748 (S.D.N.Y.1985)) (other citations omitted). As *Maritime* was decided prior to the District Court's affirmance of the June 20 Order, the District Court, in denying the motion for reargument, necessarily considered whether *Maritime* mandated vacatur of the June 20 Order to the extent it awarded attorneys' fees and costs to the Trustee and Metromedia. Thus, as the Defendants have already requested the identical relief from the District Court that it seeks from this Court, the District Court's decision is the law of the case with respect to the award of attorneys' fees and costs and is controlling. *See Doe,* 709 F.2d at 788; *cf. Fogel v. Chestnutt,* 668 F.2d 100, 109 (2d Cir.1981), *cert. denied,* 459 U.S. 828, 103 S.Ct. 65, 74 L.Ed.2d 66 *reh'g denied,* 459 U.S. 1059, 103 S.Ct. 478, 74 L.Ed.2d 625 (1982) ("The law of the case will be disregarded only when the court has 'a clear conviction of error' with respect to a point of law on which its previous decision was predicated[.]' " (citations omitted)). The underlying record on appeal before the District Court also embraced this Court's consideration of supporting authority in addition to § 362 when fashioning the remedies set forth in the June 20 Order.

The Defendants also fail to establish that it is necessary to vacate that portion of this Court's Memorandum Decision and June 20 Order which awards attorneys' fees and costs in order to correct a manifest injustice predicated upon a clear error of law.

As previously discussed, the affirmance of the award of attorneys' fees and costs notwithstanding *Maritime* was not an error or oversight, and in view of the undisputed facts, compliance with the terms of the June 20 Order will not work a manifest injustice against the Defendants. *See, generally, Metromedia*, 753 F.Supp. at 94–96; *In re William Fugazy*, 157 B.R. at 762–63; *Shimer*, 114 B.R. at 866–68. Indeed, if there is any manifest injustice here it has been imposed upon the Plaintiffs who have been long frustrated and delayed in obtaining a measure of relief arising from the Defendants' "serious misconduct." *Shimer*, 114 B.R. at 875.

### III. Conclusion

As set forth earlier, the sanctions imposed, including the accounting, attorneys' fees and costs, remain appropriate based upon the serious and egregious misconduct of the Defendants and §§ 549 and 550 of the Code. In view of the foregoing, the Defendants' motion is denied. Submit an order consistent with the foregoing.