AMERICAN BANK & TRUST COMPANY, by FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver, et al., Appellants-Respondents, v INTERMODULEX NDH CORPORATION, Respondent-Appellant.

First Department, April 22, 1980

**APPEARANCES OF COUNSEL**

*Sidney Kwestel* of counsel *(John P. Colangelo* with him on the briefs; *Kaye, Scholer, Fierman, Hays & Handler,* attorneys), for appellants-respondents.

*Raymond Polen* for respondent-appellant.

**OPINION OF THE COURT**

BLOOM, J.

Federal Deposit Insurance Corporation (FDIC) sues both in its own name and as receiver of American Bank & Trust Company (Bank), to recover on a note executed by defendant on August 19, 1976 in the principal amount of $200,000 and payable on October 5, 1976.

On September 15, 1976, the Superintendent of Banks took possession of the business and property of the Bank pursuant to the provisions of subdivision 1 of section 6 of the Banking Law. Thereafter, he designated the FDIC as receiver of the Bank, in accordance with the authority vested in him under section 634 of the Banking Law.

In or about April, 1978, this action was commenced. The complaint contains a single cause of action which alleges that on August 19, 1976 defendant executed its promissory note in writing by the terms of which it agreed to pay to the Bank the sum of $200,000 on October 5, 1976, with interest; that FDIC is presently the owner and holder of the note and has a security interest therein; and that no part of the note has been paid although due demand therefor has been made.

Defendant interposed an answer in which it admitted making the note. In addition the answer contains two affirmative defenses and three counterclaims. The first defense alleged that prior to the loan evidenced by the note, defendant purchased, through the Bank, commercial paper issued by American B & T Corporation (ABT), the Bank's holding company, in the amount of $200,000 which was to mature on October 5, 1976. Thereafter, and prior to the maturity date of the commercial paper, it sought redemption thereof to meet its busi-

ness needs. However, because redemption would entail a loss of accrued interest, it was persuaded by a representative of the Bank to forego such a course of conduct, and, in lieu thereof, to borrow a sum from the Bank equal to the face amount of the commercial paper. Under the proposed arrangement the note was to be payable on October 5, 1976, the due date of the ABT commercial paper. The commercial paper was to be deposited with the Bank and upon the maturity date thereof, the amount paid by ABT in redemption of the commercial paper would be utilized to extinguish the loan. The interest balance would be paid over to defendant. Defendant alleges that it complied with the procedure outlined by the Bank's representative and, by reason thereof, the note has been paid.

The second affirmative defense alleges that the operations, business and management of ABT and the Bank were so inextricably interwoven that the ability of ABT to pay its obligations as they matured depended upon the financial condition and liquidity of the Bank. It is asserted that the two hid their unsafe and unsound financial condition by engaging in transactions which left the Bank in a hazardous and unsafe condition by consequence of which the Superintendent of Banks issued an order on September 25, 1975 directing the Bank forthwith to discontinue certain unauthorized and unsafe business practices and to refrain from engaging in such practices in the future. These facts, it is claimed, were withheld and concealed by the Bank from defendant and had defendant known of them, it would not have entered into the loan agreement with the Bank, but would have insisted on the redemption of the commercial paper by ABT. Defendant asserts that as a consequence of these acts, plaintiffs are estopped from enforcing the note here sued upon.

By the three counterclaims interposed by it the defendant seeks recoupment of the $200,000 paid by it to the Bank to purchase the commercial paper of ABT. The first counterclaim purports to be bottomed on common-law fraud alleged to have been practiced by the Bank in the sales of the commercial paper. The second counterclaim is predicated on sections 339-a and 352-c of the General Business Law, while the third counterclaim is based on an alleged violation of rule 10b-5 of the Rules and Regulations of the Securities and Exchange Commission (17 CFR 240.10 [b] [5]).

After the joinder of issue, plaintiffs moved to strike the

affirmative defenses and counterclaims. By order entered November 9, 1979, Special Term granted the motion to the extent of striking the first affirmative defense and striking the second affirmative defense and the three counterclaims to the extent only that such "affirmative defense and counterclaims constitute a defense or affirmative claim for relief in excess of the amount of damages demanded in the complaint". Plaintiff appealed from so much of the order as denied its motion to strike the second affirmative defense and the three counterclaims. Defendant cross-appealed from so much thereof as struck the first affirmative defense.

The Banking Law sets forth "a comprehensive and exclusive means for the ascertainment of all claims against a delinquent [banking] corporation which is in liquidation; for their acceptance or rejection by the Superintendent; for the institution of actions to determine the validity of rejected claims * * *. No actions or proceedings may be taken for the enforcement of claims not filed within the time prescribed" (*Matter of Societa, etc., DiSavoia v Broderick,* 260 NY 260, 264). Subdivision 1 of section 620 requires the superintendent to notify "all persons who may have claims against such banking organization" to present their claims with proper proof thereof within four months from the date of such notice. It also provides for publication of the notice. Subdivision 3 of section 625 confers upon "a claimant whose claim has been duly filed and has not been accepted by the superintendent, or any person whose account payable as shown by the books and records, as to which no claim has been presented, has not been accepted by the superintendent" the right to recover therefor following "the expiration of eighty days after the last date fixed by the superintendent for the presentation of claims and at any time within six months thereafter". Subdivision 4 of that section bars any action by a claimant unless brought within the specified time frame. It also mandates that in any action brought by a claimant against the superintendent "the plaintiff shall be required to allege and prove that the claim upon which the action is instituted was duly filed and that eighty days have elapsed since the expiration of time for filing such claim and that such claim has not been accepted, or in the case of an action upon an account as to which no claim has been presented the plaintiff shall be required to allege and prove that such account appeared upon the books and records, that eighty days have elapsed since the last date fixed in the

notice to creditors for presenting claims and making proof thereof and that such account has not been accepted". Finally, subdivision 3 of section 619 eliminates any purported distinction between an action or special proceeding on the one hand, and a defense, setoff or counterclaim, on the other, by providing that "[a] a cause of action upon which an action cannot be maintained, as prescribed in this article, cannot be effectually interposed as a defense, set-off or counterclaim."

We deal first with the second affirmative defense and the three counterclaims asserted. It is undisputed that defendant never filed any claim with the superintendent or FDIC. Special Term held that a claim for equitable recoupment—and it so construed the defendant's claims—is not subject to the limitations imposed by subdivision 3 of section 619 of the Banking Law. This holding finds origin in cases like *Long Beach Trust Co. v Warshaw* (264 NY 331). There the Superintendent of Banks sued to recover the sum of $4,970.22, the balance due on a promissory note. By way of setoff and counterclaim defendant alleged that he had rendered legal services to the bank of the reasonable value of $5,000. Although no claim had been filed by defendant the court held the failure to file no bar to the assertion of the setoff, noting that in "the case of mutual debts it is only the balance which is the real or just sum owing by or to the insolvent. * * * If claimants desire to set off the indebtedness of the bank to them, they are not by the statute deprived of the right to do so by failure to file a claim" (p 334). Six years later the initial version of subdivision 3 of section 619 of the Banking Law was enacted. In its then form it is questionable whether it was adequate to overcome the broad language of *Long Beach Trust Co. v Warshaw (supra)*. However, in 1946 the statute was amended to include within its sweep actions brought under section 625. That the purpose of this amendment was to undo the effect of *Long Beach Trust Co.* is forcefully indicated by two memoranda substantially contemporaneous with the enactment of the amendment. One, prepared by the Banking Department which sponsored the measure and which is part of the bill jacket, notes that the then proposed amendment "would avoid the effect of this decision *[Long Beach Trust Co.]* and at the same time would prevent the assertion of a defense, set-off or counterclaim based upon a cause of action which for any other reason could not be directly asserted against a liquidation". (NY Legis Ann, 1946, p 36.) The other, a memorandum prepared for the Governor by the Attorney-

General, points up the purpose as one to insure "that an action barred either by failure to file a claim or by failure to commence it within the time limited by Section 625 cannot be interposed as a defense set-off or counter-claim, thus changing the result * * * in *Long Beach Trust Co., v. Warshaw,* 264 N.Y. 331".

■ Defendant seeks to avoid the consequence of its failure to file by contending that subdivision 3 of section 625 is a Statute of Limitations and that CPLR 203 (subd [c]) which has codified the doctrine of equitable recoupment, permits assertion of the claim if it arose from the same transaction upon which the suit is based notwithstanding that it would otherwise be time barred. This argument misconstrues the nature of the statute here involved. The requirement for "the presentation and proof of claims does not constitute a statute of limitations but merely establishes a condition precedent" (*Zuroff v Westchester Trust Co.,* 273 NY 200, 203; see, also, *Schwarz v Broderick,* 269 NY 610; 5A NY Jur, Banks and Trust Companies, § 564, p 309). Hence, any claims bottomed conceptually on the Statute of Limitations must, of necessity, fall.

It follows that the defendant's quest for relief as embodied in the second affirmative defense and the three counterclaims fall within the prohibition of subdivision 3 of section 619. By consequence, they must be dismissed.

■ Special Term correctly dismissed the first affirmative defense (*D'Oench, Duhme & Co. v FDIC,* 315 US 447). Whatever may have been the oral arrangement between defendant and an officer of the Bank, it cannot serve to defeat the note which is absolute on its face (US Code, tit 12, § 1823, subd [e]; *Bank of Suffolk County v Kite,* 49 NY2d 827).

Accordingly, the order of the Supreme Court, New York County (FRAIMAN, J.) entered November 9, 1979, is modified, on the law, to the extent of dismissing the second affirmative defense and the first, second and third counterclaims, and, except as so modified, is affirmed without costs.

MURPHY, P. J., BIRNS and MARKEWICH, JJ., concur.

Order, Supreme Court, New York County, entered on November 9, 1979, modified, on the law, to the extent of dismissing the second affirmative defense and the first, second and third counterclaims, and, except as so modified, affirmed, without costs and without disbursements.