## In re INTERCHEMICALS COMPANY, INC., et al., Debtor(s).

### Bankruptcy No. 92–49521–H5–11.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

Nov. 25, 1992.

Arne M. Ray, Ray & Associates, Houston, TX, for plaintiffs.

Patrick J. Dyer, Wilshire, Scott & Dyer, Houston, TX, for defendant.

## MEMORANDUM OPINION

KAREN KENNEDY BROWN, Bankruptcy Judge.

Before the Court is the Motion for Temporary Restraining Order brought in conjunction with an adversary proceeding filed on behalf of the jointly administered debtors in the above-styled case. At the hearing on November 23, 1992, counsel appeared on behalf of debtors, intervenors in the Texas state court proceedings, and BCCI as represented by the Superintendent of Banks of the State of New York. The Court heard testimony, and after reviewing the argument of the parties, the exhibits offered, and the law submitted in the briefs, the Court concludes that this motion should be DENIED for the following reasons:

## I.

Debtors seek injunctive relief to bar the Superintendent of Banks of the State of New York from seeking to prevent debtors from proceeding with their suit in Harris County. Debtors argue: (1) New York is collaterally estopped by virtue of an order of the Bankruptcy Court in the Southern District of New York; (2) 11 U.S.C. § 362 stays any further proceedings against debtors by the Superintendent in the New York courts; and (3) alternatively, under 11 U.S.C. § 105, this Court should enjoin further legal actions by the Superintendent in New York because the relative harm of such action to the debtors far exceeds the potential of harm to the remaining parties.

Conversely, the Superintendent maintains that: (1) the order from the New York bankruptcy court was never intended to foreclose the parties from proceeding in their respective fora; (2) the automatic stay under Section 362(b)(4) does not apply to the actions of the Superintendent because they constitute the exercise of police or regulatory power or alternatively because the acts of the Superintendent are merely defensive measures, asserted as a result of debtors' attempts to proceed with the litigation in Harris County; and (3) the New York banking laws provide an exclusive statutory scheme which bars debtors from proceeding further to liquidate their claims in Harris County.

### New York Bankruptcy Order

█ An ancillary proceeding under 11 U.S.C. § 304 was brought in the Bankruptcy Court for the Southern District of New York by the Luxembourg liquidators of Bank of Credit and Commerce International (BCCI). On October 25, 1991, a pretrial conference occurred in which both the counsel for Superintendent and counsel for debtor Interchemicals appeared. On October 31, 1991, the bankruptcy court entered a temporary restraining order for relief. (Hearing, Plaintiff Exhibit 1). This order enjoins further actions against BCCI or its related entities with specific exceptions. Excepted from the injunction are various proceedings including the consent order between BCCI and the superintendents of banks of New York and California which permits the state regulators to go forward to liquidate and distribute BCCI assets in their respective states. In addition, the bankruptcy court order specifically permits the action entitled *Hans Jurgen Wulf, et al v. Bank of Credit and Commerce International, S.A.*, Civil Action No. 91–14051 (152nd Judicial Dist., Harris County, Texas) (the "Texas Litigation") to go forward to proceed to judgment but not to execute on that judgment. This temporary restraining order appears to have been continued in place by virtue of later bankruptcy court action.

Debtor urges that the Superintendent is collaterally estopped by this order from maneuvering to stay the Harris County litigation. However, for the Superintendent to be collaterally estopped or precluded in any manner by virtue of this order, the issue must have been actually litigated by the parties or necessary to the resolution reached by the bankruptcy court, and there must be identity of the parties. *Barr v. Resolution Trust Corp.*, 837 S.W.2d 627 (Tex.1992); *Puga v. Donna Fruit Co.*, 634 S.W.2d 677, 680 (Tex.1982).

To the contrary, there is no evidence that the issue of forum exclusivity was ever presented to the New York bankruptcy court. Instead, the order merely releases certain proceedings from the universal injunction to allow the specified parties to go forward asserting whatever rights they may have in their individual cases. Consequently, after reviewing Debtors' Exhibit 1 to the hearing, this Court must conclude that the bankruptcy court order is no bar to prevent the Superintendent from asserting its position that the New York liquidation proceeding is the exclusive forum for debtors.

### The Effect of the Automatic Stay Under Section 362

Following the entry of the consent order and the temporary restraining order by the bankruptcy court, the liquidators from Luxembourg who were the petitioners in the ancillary proceeding before the New

York bankruptcy court entered into a plea bargain with the United States Government. Pursuant to that plea bargain the liquidators on their plea of guilty to racketeering charges have abandoned their claims to BCCI property in the United States. All property in the United States is to be forfeited to the United States Government except for properties subject to the liquidation proceedings pursued by the superintendents of banks in New York and California. Each of the two state liquidation procedures are permitted to go forward and any surplus assets remaining are to be relinquished to the United States Government after resolution of the claims in the state proceedings. Consequently, counsel for the Superintendent represents to this Court that a motion will be filed to dismiss the New York ancillary proceeding because that proceeding is now moot.

The parties to the hearing before this Court have stipulated that the assets to be liquidated in the New York proceedings far exceed by many millions of dollars the claims filed there. Pursuant to the claims procedure, debtors filed their claim in the New York liquidation proceeding. The Superintendent denied their claim. Debtors have until December 15, 1992, to file suit in New York in order to assert their claims under the New York liquidation proceedings.

In the Harris County case the Superintendent filed a plea in bar asserting the exclusivity of the New York proceedings. The Harris County district court has not acted on this motion. Trial is presently set on this case for the two weeks beginning December 7, 1992. Debtors filed a motion seeking a preferential setting but this motion has not been acted on by the Texas district court. Counsel for the Superintendent stated to this court that he intends to remove this Texas case to federal court in conjunction with the bankruptcy.

In 1991, debtors sued BCCI in Harris County for mishandling letters of credit involving Persico, a Brazilian steel pipe company with which debtor ICC was doing business. Debtors allege as plaintiffs that over $70 million in damages occurred as a consequence of the willful acts of BCCI. In addition, BCCI extended a line of credit in the amount of $6 million to debtors. Due to the regulators' actions, this line of credit was abruptly withdrawn in contravention of the agreement between the parties to the detriment of debtors' business.

In the Texas civil action the Superintendent asserts on behalf of BCCI a counterclaim alleging that over $1.4 million is owed to BCCI pursuant to its loan agreement with ICC.[1] This debt is secured by a first lien deed of trust on the Katy Office Building property. The Superintendent on behalf of BCCI has been restrained by the Texas state court until December 21, 1992, from foreclosing on this property.

Debtors assert that there is equity in this office building over and above the various liens on the property. Debtors argue that there will be a loss of equity in this property, if Superintendent goes forward on behalf of BCCI without debtors' complaint being considered as setoff to the BCCI counterclaim. Debtors contend that it is unjust to permit the Superintendent to bifurcate the case by compelling debtors to proceed in New York.

Prepetition, the Superintendent obtained a temporary restraining order from the Supreme Court of New York enjoining debtors from proceeding in Harris County to try their case. The hearing on this temporary restraining order has been continued by agreement of the parties and will be heard on December 4, 1992, on the Superintendent's request for entry of a preliminary injunction. The Supreme Court of New York refuses to abate this action on notice of the bankruptcy.

Consequently, the first issue is whether the automatic stay under 11 U.S.C. § 362 applies to any future proceedings brought

1. The loan agreement between Interchemicals and BCCI contains a forum selection clause designating Texas as the place of suit. In addition, the parties' original loan agreement waives a jury on disputes arising from the contemplated transactions. Debtor Interchemicals seeks a jury trial on the basis that the original agreement is not controlling.

by the Superintendent.[2] First, the Superintendent asserts the stay does not apply because these are police power or regulatory actions by the state of New York. In contrast, debtors argue that the automatic stay exception under Section 362(b)(4) does not apply because the Superintendent is acting primarily in his own pecuniary interest and not in furtherance of state banking policies or regulatory powers. Debtors urge that it was Congressional intent to give Section 362(b)(4) a narrow construction tailored to the government purpose of protecting the public health and safety. *Missouri v. U.S. Bankruptcy Court for E.D.*, 647 F.2d 768, 775–76 (8th Cir.1981); *In re Cash Currency Exchange, Inc.*, 762 F.2d 542, 554–55 (7th Cir.1985); *In re Fugazy Express, Inc.*, 124 B.R. 426, 431 (S.D.N.Y. 1991).

■ Under the Section 362(b)(4) exception, movants need not demonstrate a showing of imminent and specific public harm. *In re Commonwealth Oil Refining Co.*, 805 F.2d 1175, 1185 (5th Cir.1986). The exception applies instead to continuing state civil enforcement proceedings designed to enforce a regulatory scheme. *SEC v. First Financial Group*, 645 F.2d 429, 437 (5th Cir.1981).

■ The District Court for the Southern District of Texas has noted that in order to:

... determine whether a governmental function is among those that should be exempt, the court must evaluate the function of the regulation, the probability of direct public harm, the opportunity for the public interest to be effectively represented in the bankruptcy proceeding, and the relation between the regulation and the financial, legal, and structural requirements for an effective reorganization. *See In re King Memorial Hospital, Inc.*, 4 B.R. 704 (Bankr.S.D.Fla. 1980); *In re Joe DeLisi Fruit Co.*, 11 B.R. 694 (Bankr.D.Minn.1981).

*In re MCorp*, 101 B.R. 483, 489 (S.D.Tex. 1989), *vacated on other grounds, MCorp Financial, Inc. v. Board of Governors of Federal Reserve System of United States*, 900 F.2d 852 (5th Cir.1990). In the case at bar, the New York state regulatory scheme is somewhat equivalent to a state receivership. In this context, it serves the same purpose as a state civil trial, to adjudicate the claims of the parties. Except for the potential delay, (possibly six months in New York), the state adjudication processes may well complement bankruptcy proceedings by liquidating adverse claims. This Court often abstains from or remands such cases. Consequently, debtors fail to show disruption to the bankruptcy proceedings because of the nature of the regulatory activity.

The Superintendent points to a previous decision by this Court styled *In re Piperi*, 133 B.R. 846 (Bankr.S.D.Tex.1990) in which the Court concluded that a receiver for a failed financial institution was exempt from the automatic stay by virtue of the receiver's need for promptly completing state litigation on behalf of the uninsured depositors of a defunct state banking institution. This Court concluded that, since the movant's actions were not "solely for pecuniary purposes but also furthering the state's goal in the regulation of public welfare, and are an attempt to minimize the injury to the depositors," they were excepted from the stay. *Id.* at 849.

Debtors attempt to distinguish *In re Piperi* on the grounds that Piperi himself had been charged with fraud, and there was a likelihood that distribution of the assets to innocent depositors would be delayed, absent the receiver's actions in state court. Moreover, debtor notes that this court held in *Piperi* that in the alternative if the stay were later to be found applicable it should be lifted. Debtor further distinguishes *Piperi* because the surplus assets available to the Superintendent allow distribution to go forward without any delay necessitated by the resolution of debtor's case.

**2.** This Court concludes that the New York ex parte TRO entered November 6, 1992, three days before the petition was filed, is entitled to full, faith, and credit but will expire on its own terms after December 4, 1992. Consequently, this Court must address the question of the scope of the automatic stay.

■ At issue then is whether the Superintendent seeks to enforce some public interest. This Court agrees with the court in *Penn Terra Ltd. v. Dept. of Environmental Resources*, 733 F.2d 267 (3rd Cir.1984) to the effect that federal statutes such as Section 362 which preempt the effect of state statutes should be read narrowly. *Id.* at 273. Here the Superintendent of Banking of the state of New York seeks to enforce its regulatory scheme to provide a claims mechanism for litigants so as to liquidate and distribute the assets in its custody for the benefit of all claimants. While it is a successor to the rights of the defunct banking institution and thereby steps into the shoes of a civil litigant, it is participating in its capacity as governmental receiver or liquidator of the institution. If a private court-appointed receiver such as in *Piperi* is deemed to be performing a government function, then surely the state banking regulator participating in the state liquidation in whatever forum acts in the public interest. Debtors point to no cases distinguishing between the Superintendent's bank licensing, bank liquidating activities, or claims resolution activities as police power functions.

### *Injunctive Relief Under 11 U.S.C. § 105*

■ Injunctive remedy under Section 105 is recognized as available to the bankruptcy court against government entities even though they may otherwise be excepted from the automatic stay. *Penn Terra Ltd., supra* at 274; *In re MCorp, supra* at 489. The Superintendent argues that debtors failed to bear their burden of proof under the traditional, equitable standards required to justify injunctive relief. Conversely, debtors argue that this Court should exercise its power under Section 105 to give effect to the order of the Bankruptcy Court for the Southern District of New York which expressly permitted debtors to proceed in Harris County. As noted previously, however, this Court concludes that the October 31, 1991, order by the New York Bankruptcy Court was a release to proceed and not a mandatory order requiring the parties to litigate in a specific forum. Consequently, debtors must demonstrate all the prerequisites for success on an injunction: (1) likelihood of prevailing on the merits; (2) likelihood of irreparable injury absent injunctive relief; (3) the likely injury outweighs the harm resulting from an injunction; (4) injunctive relief is not contrary to public policy. *In re Commonwealth Oil Refining Co., supra* at 1189.

Debtors' affidavits and deposition testimony attached to debtors' response to the Superintendent's plea in bar indicate that debtors do have a substantial likelihood of prevailing on the merits of their state case against BCCI at least as to the *Persico* issue. However, debtors must also show likelihood of success on the issue of forum exclusivity in order to obtain injunctive relief. Since this issue is resolved against debtors, *infra*, relief under Section 105 must be DENIED.

■ New York Banking Law Section 619 provides:

Except as provided in the civil practice law and rules for venue for real property actions, all actions against a banking organization in the possession of the superintendent or against the superintendent arising out of its affairs, shall be instituted and maintained in a court of record in the county in which such banking organization maintained its principal place of business.

The court in *Societa Principessa Iolanda Margherita di Savoia, Inc. v. Broderick*, 260 N.Y. 260, 183 N.E. 382 (N.Y.1933) determined that the predecessor to this law provided a comprehensive and exclusive means for the ascertainment of claims against a bank in liquidation. *See also American Bank & Trust Co. v. Intermodulex NDH Corp.*, 74 A.D.2d 218, 427 N.Y.S.2d 30 (N.Y.App.Div.1980). The clear intent of Section 619 is that all unliquidated "actions" be resolved in the New York forum. The parties do not dispute that the only accessible assets in the United States against which debtors could seek recovery of their damages are in New York (the California claims procedure being closed). Consequently, and pursuant to Section 619,

the plaintiffs must bring their lawsuit in New York against the Superintendent.

For the foregoing reasons, the Court finds that New York provides the exclusive forum for the liquidation of the plaintiffs' claims, and, therefore, injunctive relief is inappropriate.