**In the Matter of FUGAZY EXPRESS, INC., Debtor.**

**Zachary SHIMER, Chapter 7 Trustee of Fugazy Express, Inc. and Metromedia Company, Plaintiffs–Appellees,**

**v.**

**William D. FUGAZY, Fugazy Limousine Ltd. f/k/a R.D.F. Limousine Corp. and Roy D. Fugazy, Defendants–Appellants.**

**No. 90 CIV. 5181 (KTD).**

United States District Court, S.D. New York.

Feb. 25, 1991.

---

Anderson Kill Olick & Oshinsky, P.C. (Arthur S. Olick, Mark D. Silverschotz, of counsel), New York City, for appellant William D. Fugazy.

Chadbourne & Parke (Zachary Shimer, Margaret Groarke, of counsel), New York City, for plaintiff-appellee Zachary Shimer, Trustee.

Shea & Gould (Martin I. Shelton, Scott A. Steinberg, Mary Gail Gearns, Joseph M. Vann, of counsel), New York City, for plaintiff-appellee Metromedia Co.

Garrity & McCusker (James Lawrence Garrity, George Kuntu–Blankson, of counsel), New York City, for defendants-appellants Fugazy Limousine Ltd. f/k/a R.D.F. Limousine Corp. and Roy D. Fugazy.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge:

Appellants, William D. Fugazy, Roy D. Fugazy, and Fugazy Limousine Ltd. f/k/a R.D.F. Limousine Corp. ("Limousine") pursuant to 28 U.S.C. § 158(a) (1984), appeal to this court from an order of the Bankruptcy Court (Lifland, J.) denying their motions for summary judgment and granting cross-motions in favor of appellees Zachary Shimer, the Chapter 7 Trustee of Fugazy Express, Inc., (the "trustee") and Metromedia Company ("Metromedia"). By Memorandum Decision dated May 14, 1990, 114 B.R. 865, the bankruptcy court held that: (1) the Debtor had an interest in the License for the period of the bankruptcy; (2) the actions of the FCC have no impact on the ruling; and (3) there was an improper post-petition transfer of property of the estate in violation of the Bankruptcy Code (the "Code"). 11 U.S.C. § 549 (1978). The judge ordered an award of costs, attorneys' fees and damages based on an accounting of the revenue received as a result of unauthorized use of the License.

## FACTS

Fugazy Express (the "Debtor") was in the business of selling and servicing franchises for livery and limousine services to independent livery limousine operators who operated under the "Fugazy" name. Pursuant to the franchise agreements, the Debtor was obligated to provide radio dispatching services for the franchisees. Dispatches were broadcast over several radio frequencies, for which the Debtor obtained licenses and permits from the Federal Communications Commission (the "FCC"). The FCC issued, *inter alia*, the call sign KXY 610 and frequencies 478.68750 and 481.-68750 ("the License") to Debtor, which Debtor used as part of its business. William Fugazy was formerly the controlling shareholder and officer of Debtor. His son, Roy Fugazy, was formerly Vice–President of Marketing of the Debtor and is now the controlling shareholder of Limousine.

The action originated as a voluntary filing for reorganization under Chapter 11 of the Code by the Debtor on July 8, 1986. 11 U.S.C. § 101 *et seq.* (1978). On January 28, 1987 Limousine filed an application to the FCC for approval of an assignment of the License to it from Debtor by William Fugazy. As of March 25, 1987 the Debtor ceased operating as a debtor-in-possession and the Chapter 11 case was converted by the court to a Chapter 7 proceeding looking toward liquidation. 11 U.S.C. § 701 *et seq.* (1978). A trustee was appointed two days later. On April 15, 1987 the FCC approved the assignment of the License to Limousine. The Bankruptcy Court entered an order authorizing an auction of Debtor's property on May 18, 1987. At the auction, all right, title, and interest in Debtor's six FCC licenses, including the License at bar, were transferred to Metromedia for $500. On June 24, 1987 Metromedia learned that William Fugazy had previously conveyed the License to Limousine sometime after the Chapter 11 case commenced. This conveyance was done without the Bankruptcy Court's knowledge or permission.[1]

The Bankruptcy Court entered an order on September 10, 1987, that stated the assignment by William Fugazy of Debtor's interest in the License to Limousine was void and that Limousine held no legal or equitable rights or interests in the License. The trustee was directed to sell the License to Metromedia. William Fugazy and Metromedia were required to send a copy of the order to the FCC, taking whatever actions that the FCC requested to effectuate the order, and William Fugazy was to give a seventy-two hour written notice of any applications or filings with the FCC. Additionally, the Court dismissed Metromedia's claims against William Fugazy, except as otherwise provided in the order. William Fugazy, his attorneys, and counsel to Metromedia consented to the order. The attorneys for Limousine and Roy Fugazy appeared in all relevant hearings, including that pertaining to the consent order.

On September 15, 1987 Metromedia applied to the FCC to void the assignment of the License. Limousine opposed the application and was granted a temporary authorization to use the License, pending a resolution of the dispute. Stating that the trustee was not eligible to hold a license because he was not engaged in the taxicab business, the FCC denied the trustee's application on October 14, 1987. Additionally, the FCC stated the License was in Limousine's name and no letter expressing Limousine's desire to transfer the License was received by the FCC. An application to reinstate the trustee's request was denied by the FCC. On October 27, 1987, the bankruptcy court denied a motion by William Fugazy, Roy Fugazy, and Limousine to dismiss the action. In response to Metromedia's request to void the assignment of the License to Limousine, the FCC ruled on October 28, 1988, that when the Debtor ceased its operations on December 31, 1986, the License should have been returned to the FCC and that the License was retroactively void as of that date.

---

1. On August 18, 1987, the trustee and Metromedia commenced the present adversarial action against William Fugazy, Roy Fugazy, and Limousine, contesting the transfer of the License. The FCC was not named as a party and did not take part in the Bankruptcy Court proceedings.

## DISCUSSION

At the outset, a grant of summary judgment by a bankruptcy court is subject to *de novo* review in a district court. *Royal Bank and Trust Co. v. Pereira (In re Lady Madonna Indus., Inc.)*, 99 B.R. 536 (S.D.N.Y.1989). A bankruptcy judge's findings of fact stand unless found by the district court to be clearly erroneous. *In re Skinner*, 917 F.2d 444 (10th Cir.1990). The same standard applies to a review of an award of damages. *In re B. Cohen & Sons Caterers, Inc.*, 108 B.R. 482 (E.D.Pa. 1989).

In view of the record and all of the submissions, I conclude that there are no material issues in dispute which would prevent a disposal of the case by summary judgment.[2]

### A. The License

The Fugazys and Limousine argue that the bankruptcy court incorrectly found that the License was part of the estate and that the court lacked jurisdiction over the License because of provisions in the Federal Communications Act of 1934 (the "Act"). 47 U.S.C. § 301 *et seq.* I disagree.

The License was part of the Debtor's estate because of the broad definition of property under the Code. According to the Code, the commencement of a case in bankruptcy creates an estate, which includes property, wherever located and by whomever held, and, with certain exceptions not pertinent here, all legal and equitable interests of the debtor in property. 11 U.S.C. § 541(a)(1). The property of the estate includes tangible personal property, intangible property and causes of action. *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983).

Licenses subject to governmental regulation are part of a bankruptcy estate. *In re Beker Indus. Corp.*, 57 B.R. 611 (Bankr.S.D.N.Y.1986). The mere existence of state or federal regulation is insufficient to exclude an item as property of the bankruptcy estate. The License at bar is property of the estate created by the Fugazy bankruptcy. *See In re Smith*, 94 B.R. 220 (Bankr.M.D.Ga.1988) (an FCC license became part of the estate upon filing chapter 7 petition); *Bernstein v. R.C. Williams, Inc., (In re Rocky Mountain Trucking Co.)*, 47 B.R. 1020 (D.Colo.1985) (a certificate enabling debtor trucking corporation to provide services as a common carrier was part of the estate and properly auctioned off after conversion from chapter 11 to chapter 7).

This holding does not conflict with the congressional mandate given the FCC, as contended by the Fugazys and Limousine. The purpose of the Federal Communications Act is to maintain control over and provide for the use of the channels of radio transmission, but "not the ownership thereof". 47 U.S.C. § 301 (1962 & Supp. 1990). However, the Act implicitly creates a property right in the license by providing "no such license shall be construed to create any right, *beyond* the terms, conditions, and periods of the license." 47 U.S.C. § 301 (emphasis added). *See L.B. Williamson, Inc. v. Federal Communications Comm'n*, 170 F.2d 793, 798 (D.C.Cir.1948) (Although a radio broadcasting station license does not confer an unlimited and indefeasible property right, the right is limited in time and quality by the terms of the license, it is more than a mere privilege or gratuity, it is "a thing of value to the person to whom it is issued.").

---

**2.** Roy Fugazy contends the court ignored his Affidavit of April 18, 1989 which sets forth: his belief that Debtor abandoned its operations and the License; his reliance on advice of "FCC counsel" that the License terminated and was no longer part of the estate; his belief that the assignment was proper; and his understanding of a common operating agreement with respect to other corporation operating under the Fugazy name.

These beliefs were determined by the bankruptcy judge not to be material in this determination. I agree. Under § 362(h) of the Code, the court may even assess monetary sanctions even when there have been inadvertent violations of the automatic stay. *Burley v. American Gas & Oil Investors (In re Heafitz)*, 85 B.R. 274, 281–82 (Bankr.S.D.N.Y.1988). Therefore, personal beliefs have no impact on the decision as to certain property in the estate of the Debtor.

## B. Violation Of The Stay

Section 362 of the Code operates as an automatic stay of all actions and proceedings against the debtor, or any act to obtain property of the estate. 11 U.S.C. § 362(a). There is an exception to the stay for a governmental unit to enforce that unit's police or regulatory power. 11 U.S.C. § 362(b)(4). However, as indicated by the legislative history, that exception is to be read narrowly so as to permit governmental entities to protect the public health and safety. 124 Cong.Rec. H11,092 (daily ed. Sept. 28, 1978) (remarks of Rep. Edwards); 124 Cong.Rec. S17,409 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini). The revocation of a license by the FCC does not affect the health or safety of the public, so there is no exemption to the stay under this section of the Code. The FCC was therefore stayed from cancelling the License without first requesting from the Bankruptcy Court relief from the automatic stay.

Alleging that there is a conflict between the FCC and the Bankruptcy Court in the disposition of the License, the Fugazys and Limousine assert that even if the License was part of the estate, the October 28, 1988 decision of the FCC made the License retroactively cease to exist as of December 1986 when the Debtor ceased operations. They argue that there could be no violation of the stay because, in light of the FCC determination that the License was retroactively void, nothing was transferred. *See* W. Fugazy Brief at 7 (the transfer was a "meaningless act which cannot properly form the basis for a contempt"). I disagree.

As noted earlier, the FCC is not a party to this action. Memorandum Decision at 15. Additionally, the Bankruptcy Court specifically stated that its Memorandum Decision deals only with the Fugazys and Limousine and does not address the validity of the FCC actions as impacted by the automatic stay. *Id.* at 15–16. "Thus the License remained property of the estate, even though administratively it became subject to cancellation", according to the Bankruptcy Court. *Id.* at 20.

## C. Damages

The Code provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees." 11 U.S.C. § 362(h). The Bankruptcy Court found that William Fugazy improperly transferred the License in violation of the stay provisions of the Code. William Fugazy was the controlling shareholder of the Debtor and the transferor of the License to his son. That William Fugazy unjustifiably attempted the transfer is clear. Therefore, the damage award of one-third of the Trustee's costs and attorney's fees relative to the License litigation, through the date of the Consent Order, reflect the expenses caused by William Fugazy's wrongful conduct and are not clearly erroneous.

Roy Fugazy and Limousine argue that the complaint never alleged that either Roy Fugazy or Limousine had knowledge that the assignment might be a violation of the automatic stay. I disagree. Paragraph 40 of the Complaint alleges a "knowing, willful and intentional violation of the automatic stay by [William Fugazy] and [Limousine]." Paragraph 37 of the Complaint alleges "[a]t the time of the said purported transfers of the F.C.C. radio licenses and permit Defendants had actual knowledge of the bankruptcy proceedings and the appointment of the Trustee."

The Bankruptcy Court further found that Roy Fugazy, on behalf of himself and Limousine, knowingly violated the stay provisions of the Code. This finding is based on the fact that Roy Fugazy was a former officer of the Debtor and thus may be found to have actually or constructively known of the bankruptcy and the stay. Moreover, he received the License of the Debtor in a less than arms-length transaction with his father. Finally, the License was used by Limousine in the course of its business, at first without the court's knowledge, then in contravention of the Bankruptcy Court's order. It follows then that both Roy Fugazy and Limousine should be

liable for their aliquot portion of the damage award.

### D.  Equitable Relief

The Bankruptcy Court ordered the equitable relief of an accounting under New York law for the revenues derived from the unauthorized use of the License by Limousine and Roy Fugazy. Roy Fugazy and Limousine were required to account to the trustee for revenues from the date of its initial use to June 18, 1987, the date of the auction. Revenues from June 18, 1987 to the present were to be paid to Metromedia, the business that purchased the License at auction.

The trustee in bankruptcy may recover from the transferee property or "the value of such property" transferred in violation of the stay provisions of the Code. 11 U.S.C. § 550(a). Under New York law, an accounting may be available where special circumstances warrant equitable relief in the interests of justice. *Grossman v. Laurence Handprints–N.J., Inc.*, 90 A.D.2d 95, 455 N.Y.S.2d 852 (2d Dep't 1982). An accounting may be available once the underlying right has been established. *Wishman v. Genesee–Monroe Racing Ass'n, Inc.*, 43 A.D.2d 785, 349 N.Y. S.2d 1009 (4th Dep't 1973). In this case, it is established that the License is property of the Debtor's estate, the serious nature of the misconduct is evident, and the ineffectiveness of a legal remedy is clear. It is therefore appropriate to order an accounting.

It is not then clearly erroneous to order an accounting for revenue attributable to the License from the date of its initial use, given the degree of sophistication of the parties, the serious nature of the misconduct, and the fact that Roy Fugazy profited from the use of the License. *See Burley v. American Gas & Oil Investors (In re Heafitz)*, 85 B.R. 274, 281–82 (Bankr.S.D.N.Y.1988) (inadvertent violators of stay and their attorneys were sophisticated and familiar with broad application of the automatic stay, they made no effort to determine the respective rights of the parties and were therefore found to have acted in "arrogant defiance of the law.").

Roy Fugazy and Limousine allege that § 550(a) of the Code prevents the award to Metromedia, because that section only provides for a recovery by a trustee. They contend that an entity to whom the trustee has transferred property of the Debtor's estate may not recover pursuant to this section. This argument fails. Rather than awarding the entire amount to the Trustee and directing that the proceeds as of the auction date be turned over, the relief merely reflects the fact of the sale of the License at auction.

Finally, there have been allegations made regarding the "unclean hands" of the Trustee and Metromedia as to their applications before the FCC. The Bankruptcy Court properly dismissed these claims *sub silentio*. When sitting as a court of equity, a bankruptcy court must observe equitable defenses. *Pepper v. Litton*, 308 U.S. 295, 60 S.Ct. 238, 84 L.Ed. 281 (1939). However, having determined that any actions before the FCC have no impact on the case at hand, allegations regarding the timing and content of FCC filings are not relevant to this appeal. The mere existence of unresolved factual issues which are not material to the outcome of the dispute will not prevent summary judgment from issuing. *See Quarles v. General Motors Corp.*, 758 F.2d 839, 840 (2d Cir.1985) (summary judgment properly granted to employer which fired employee engaged in fraud, despite unresolved allegations of racial discrimination).

For the foregoing reasons the Memorandum Decision of the Bankruptcy Court is in all respects affirmed.

SO ORDERED.