**In re Roscoe S. PUTNAM, Jr., and Patricia E. Putnam, Debtors.**

**Roscoe S. PUTNAM, Jr., and Patricia E. Putnam, Plaintiffs,**

v.

**RYMES HEATING OILS, INC., Defendant.**

**Bankruptcy No. 92–11997–MWV.
Adv. No. 92–1092–MWV.**

United States Bankruptcy Court, D. New Hampshire.

April 8, 1994.

As Amended on Reconsideration May 17, 1994.

Joseph J. Byk, Jr., Peterborough, NH, for Rymes Heating Oils, Inc., plaintiff.

Nathan T. Foose, Gray, Wendell and Clark, Manchester, NH, for Roscoe S. Putnam, Jr. and Patricia E. Putnam, defendants.

Lawrence Sumski, Amherst, NH, Trustee.

## MEMORANDUM OPINION

MARK W. VAUGHN, Bankruptcy Judge.

In accordance with the December 1, 1993, Order of the United States District Court for the District of New Hampshire, this Court held an evidentiary hearing on February 18, 1994, on the issue of whether Plaintiffs are entitled to actual damages, including attorneys' fees, as a result of a violation of the automatic stay (11 U.S.C. § 362). For the reasons set out below, the Court finds that the defendant, Rymes Heating Oils, Inc. ("RHO"), willfully violated the automatic stay and awards actual damages to the Plaintiffs of $248.16 and attorneys' fees and expenses to counsel for the Plaintiffs of $3,540.38.

### FACTS

Certain facts are undisputed. They are:

1. The plaintiffs, Roscoe S. Putnam, Jr., and Patricia E. Putnam ("Plaintiffs"), filed a chapter 13 petition on June 24, 1992.

2. RHO is a creditor of the Plaintiffs, duly listed on the Plaintiffs' bankruptcy schedules.

3. RHO provided the Plaintiffs with propane gas and a propane tank, which Plaintiffs used for space heating, water heating and cooking needs. The tank remained the property of RHO.

4. On July 6, 1992, an employee of RHO removed the propane tank from the premises of the Plaintiffs. The tank was 60% full of propane and had last been filled in January 1992 at a cost of $329.00.

5. In the afternoon of July 6, 1992, counsel for the Plaintiffs telephoned James

Rymes, the owner and president of RHO, and informed him of the bankruptcy. Mr. Rymes indicated to counsel for the Plaintiffs that he did not believe that the Plaintiffs had filed bankruptcy.

6. In the afternoon of July 7, 1992, counsel for the Plaintiffs successfully faxed a copy of the "Notice of Commencement of Case Under Chapter 13" to RHO and RHO was on notice that a bankruptcy had been filed.

7. On July 7, 1992, the Plaintiffs commenced this adversary proceeding, seeking the turnover of the propane tank and injunctive relief and damages for willful violation of the automatic stay.

8. A hearing was held in this Court on July 9, 1992, as a result of which the Court ordered RHO to "return [the] tank with oil it contained at removal within 24 hours—failing which this matter will be set down for [a] § 362(h) damages hearing." At this hearing, the Court dismissed the claim for punitive damages.

9. RHO returned the propane tank as ordered before the end of business on July 9, 1992.

10. On December 10, 1992, this Court held a pretrial hearing on the complaint. At that hearing, the Plaintiffs asserted that, although the Court had dismissed the punitive damage claim on July 9, 1992, they were still entitled to actual damages and attorneys' fees. The Court indicated that the issue should have been raised on July 9, 1992, and dismissed the complaint.

11. On December 30, 1992, *twenty* days after the pretrial hearing and sixteen days after the Court docketed its Order dismissing the Plaintiffs' complaint, the Plaintiffs filed "Debtors' Motion for Reconsideration of and Relief From Dismissal Order Dated December 10, 1992" pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure and Rule 60(b) of the Federal Rules of Civil Procedure.

12. On January 28, 1993, the Court held a hearing on the Plaintiffs' motion. At that hearing, the Court denied the Plaintiffs' motion, concluding that the Plaintiffs' motion was not a Rule 60(b) matter.

The Court stated in addition that, if the Court was wrong on the damages question, then Plaintiffs should have moved for reconsideration within ten days (in accordance with Bankruptcy Rules 9023 and 8002(a)), not pursuant to Rule 9024.

13. On February 5, 1993, the Plaintiffs filed a notice of appeal, which framed the issue on appeal as follows:

Whether the Bankruptcy Court erred in dismissing the plaintiffs' complaint at the pretrial hearing held on December 10, 1992, thereby dismissing the plaintiffs' claims for recovery of actual damages, including costs and attorneys' fees, suffered as a result of the defendant's willful violation of the automatic stay.

14. On December 1, 1993, the District Court issued its Order, reversing the December 10, 1992, decision of the Bankruptcy Court and remanding the matter with direction to this Court to conduct a hearing on whether the Plaintiffs are entitled to actual damages, including costs and attorneys' fees. In its order, the District Court noted that "the statute (11 U.S.C. § 362(h)) mandates an award of compensatory damages if a creditor acts willfully in violating the bankruptcy stay. The creditor's remedial acts pursued subsequent to its violation should have no bearing on a court's determination to award damages." Order at 8 (citations omitted).

15. On February 18, 1994, after one cancellation on January 28, 1994, for inclement weather, this Court held its evidentiary hearing as directed by the District Court.

### LEGAL DISCUSSION

Section 362(h) of the Bankruptcy Code provides: "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). In the present case, the Plaintiffs are individuals entitled to actual damages, costs and attorneys' fees if the Court finds a willful violation of the stay provided by section 362. The issue of puni-

tive damages is not before this Court as that claim was dismissed at the July 9, 1992, hearing and was not the subject of a subsequent appeal.

■ The Bankruptcy Code does not define the term "willful" so this Court must first adopt a definition of this term and, then, based on that definition, decide whether the evidence before the Court supports the finding of a willful violation of the automatic stay. As noted in the District Court's opinion, courts have defined the term "willful" in one of two ways. The more narrow definition finds a willful violation when "a deliberate and intentional act [is] done with the knowledge that the act is in violation of the stay." *Forty–Eight Insulations, Inc. v. Lipke (In re Forty–Eight Insulations, Inc.)*, 54 B.R. 905, 909 (Bankr.N.D.Ill.1985). This Court believes that this definition is too narrow to deter violations of the automatic stay. Instead, this Court adopts the broader definition adopted by the Second, Third, Fourth and Ninth Circuits that a creditor acts willfully if it (1) has knowledge of the petition, and (2) the act which violates the stay was intentional. *Johnson Envtl. Corp. v. Knight (In re Goodman)*, 991 F.2d 613, 618 (9th Cir.1993); *Crysen/Montenay Energy Co. v. Esselen Assoc. (In re Crysen/Montenay Energy Co.)*, 902 F.2d 1098, 1105 (2d Cir.1990); *Coffee v. Atlantic Bus. and Community Dev. Corp. (In re Atlantic Bus. and Community Dev. Corp.)*, 901 F.2d 325, 329 (3rd Cir.1990); *Budget Serv. Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 290 (4th Cir.1986). As the Second Circuit said in *Crysen*, "[t]his standard encourages would-be violators to obtain declaratory judgments before seeking to vindicate their interests in violation of an automatic stay, and thereby protects debtors' estates from incurring potentially unnecessary legal expenses in prosecuting stay violations." 902 F.2d at 1105.

■ On the record before this Court, there is no evidence that Defendant RHO had knowledge of the Plaintiffs' bankruptcy on July 6, 1992, when an employee of the Defendant repossessed the propane tank from the premises of the Plaintiffs. However, there is evidence that the Defendant knew of the bankruptcy on the afternoon of July 7, 1992, after receiving a fax of the Plaintiffs' "Notice of Commencement of Case Under Chapter 13." At the hearing on February 18, 1994, Mr. Rymes indicated that he was generally knowledgeable of the automatic stay from previous bankruptcies in which his company had been a creditor. When asked by Plaintiffs' counsel,

> Okay. Yet having received some notice or indication of a possible bankruptcy filing Tuesday afternoon, you, nevertheless, failed to do anything about returning the tank until after the court hearing on Thursday. Is that correct?

Mr. Rymes replied,

> It is correct. I felt that I was within my rights. I had removed the tank and its contents prior to receiving it. I had no knowledge of a bankruptcy when the tank was removed.

Thus, having knowledge of the bankruptcy, the tank was not voluntarily returned. This Court finds that a willful violation occurred—not when the tank was originally taken—but when, after the Defendant had knowledge of the bankruptcy on July 7, 1992, the tank was not returned until after ordered to do so by this Court on July 9, 1992. Failure to return the tank after having knowledge of the bankruptcy petition is a willful violation of the automatic stay. *See, e.g., Knaus v. Concordia Lumber Co., Inc. (In re Knaus)*, 889 F.2d 773, 775 (8th Cir.1989) (filing of a bankruptcy petition creates a duty for creditors in possession of estate property to turnover such property); *Abrams v. Southwest Leasing and Rental, Inc. (In re Abrams)*, 127 B.R. 239, 242 (9th Cir. BAP 1991) (continued retention of repossessed property after creditor had been notified of debtors' bankruptcy filing was itself a willful violation of the stay); *Miller v. The Savings Bank of Baltimore*, 22 B.R. 479, 481 (D.Md.1982) (refusal to return vehicle after receiving actual notice of the automatic stay is a willful violation of the stay).

Had RHO contacted legal counsel immediately upon receiving notice of the Plaintiffs' bankruptcy filing and made arrangements for the return of the tank shortly after receiving notice, then a different result might be reached. *See, e.g., Commercial Credit Corp. v. Reed*, 154 B.R. 471, 476–77 (E.D.Tex. 1993) (creditor acted "reasonably" to restore

status quo and, thus, there was no willful violation warranting an award of damages to the debtors, but distinguishing those cases in which there was a voluntary return from those cases in which the return was only after a court order to do so); *Carlsen v. Internal Revenue Service (In re Carlsen)*, 63 B.R. 706, 710 (Bankr.C.D.Cal.1986) (creditor must act with reasonable dispatch to remedy unintentional violation of the automatic stay). RHO, however, did not contact its own legal counsel until the morning of the hearing on July 9, 1992, two days after it first gained knowledge of the Plaintiffs' bankruptcy filing, and appeared without counsel at the July 9 hearing. The Court finds that, based on the foregoing and under the circumstances presented here, the Defendant did not act with reasonable dispatch to remedy the original unintentional violation of the automatic stay. Although RHO knew that the Plaintiffs required the propane for heating, hot water and cooking, had knowledge of the bankruptcy and knowledge of the filing of this adversary proceeding on July 7, 1992, it nevertheless failed to return the propane tank until July 9, 1992, after being ordered to do so by the Court.

Having found a willful violation of the automatic stay, the Court has no alternative but to award actual damages, including costs and attorneys' fees pursuant to section 362(h). However, because of the facts of this case and its procedural context (i.e., original hearing, pretrial dismissal, reconsideration, appeal, remand and evidentiary hearing), the actual damage award for costs and attorneys' fees is not easy.

The Court will first address the easier portion of the award, which is the actual damages to the Plaintiffs. At trial, the Plaintiffs provided evidence of actual damages consisting of meals, mileage and lost wages of $248.16. This Court awards Plaintiffs the sum of $248.16 as actual damages. The Plaintiffs also requested the sum of $1,500.00 as compensatory damages for inconvenience and humiliation. The Court denies this request as the Court finds, based on the facts

of this case, that the debtor's inconvenience has been adequately compensated by the Court's previous award of actual damages and there is insufficient evidence for any award for humiliation. *In re Still*, 117 B.R. 251, 254 (Bankr.E.D.Tex.1990).

The issue of costs and attorneys' fees is more complex. Counsel for the Plaintiffs has requested $6,168.00 in attorneys' fees and $718.70 in costs for a total of $6,886.70. By its terms, section 362(h) does not limit attorneys' fees. Moreover, section 362(h) and its sparse legislative history are silent on the standards and methodology to be used in determining assessments of fees and costs for willful violations of the automatic stay. *See* 1984 U.S.C.C.A.N. 576–606. Courts which have awarded fees under section 362(h), however, have tempered such awards by a reasonableness standard. *E.g., McLaughlin v. Fireman's Trust Mortgage Corp. (In re McLaughlin)*, 96 B.R. 554, 559 (Bankr.E.D.Pa.1989) (and cases cited therein); *Joslyn v. Ford Motor Credit Corp. (In re Joslyn)*, 75 B.R. 590, 592 (Bankr.D.N.H. 1987) ("reasonable" fees of $5,000.00 awarded).

■ The policy behind section 362(h) is self-evident; it is intended to discourage violations of the automatic stay. *McLaughlin*, 96 B.R. at 560. Rewarding debtors too lavishly, on the other hand, will only "encourage a cottage industry of precipitous § 362(h) litigation. This is not to be encouraged either." *Id.* Based on the reasons below, the Court in the instant case believes that the costs and attorneys' fees should be tempered.

First, the amount of the costs and attorneys' fees has no relationship to the amount of actual damages suffered by the Plaintiffs ($248.16) or the value of the gas in the tank removed (less than $329.00). Furthermore, counsel for the Plaintiffs immediately initiated this adversary proceeding on the same day he made the Defendant aware of the bankruptcy filing rather than attempt to remedy the situation outside of court at less time and expense to all parties.[1]

---

1. While the issue of the duty to mitigate damages in a 362(h) case has not been raised in this case, the Court notes the case of *In re Esposito*, 154 B.R. 1011 (Bankr.N.D.Ga.1993), where the court found that the reasonable counsel fees of the debtor were $1,700.00, but of that amount only $500.00 would be chargeable to the creditor since the debtor had refused to accept a reasonable offer from the creditor which would have substantially reduced the fees.

Second, the Court notes that a considerable amount of the fees and expenses are connected with the appeal. This Court believes that the appellate review was fortuitous to the Plaintiffs. The Bankruptcy Court dismissed Plaintiffs' claim for actual damages on December 10, 1992. The Plaintiffs did not preserve their appeal of the December 10, 1992, decision by either filing a motion for reconsideration or a notice of appeal within ten days as required by Federal Rule of Bankruptcy Procedure 8002(a). Instead, the Plaintiffs moved for reconsideration on December 30, 1992, sixteen days after the order of dismissal was docketed. After a hearing on the motion for reconsideration on January 28, 1993, which was denied, the Plaintiffs filed their notice of appeal on February 5, 1993. The only decision at this point which was ripe for appeal was the denial of the motion for reconsideration, not the dismissal of the Plaintiffs' claims. For whatever reason, the Defendant appears to have waived this issue in the appellate process and the District Court accepted and subsequently granted the appeal.

Had RHO objected to the Plaintiffs' statement of the issue on appeal, this case would not likely be before this Court because "Rule 60(b) is a vehicle for 'extraordinary relief,' [and] motions invoking the rule should be granted 'only under exceptional circumstances.'" *De La Torre v. The Continental Ins. Co.*, 15 F.3d 12, 14–15 (1st Cir.1994) (quoting *Lepore v. Vidockles*, 792 F.2d 272, 274 (1st Cir.1986)). The Order of Judge Yacos dated January 28, 1993, which should have been the subject of the appeal, would only have been reviewed for an abuse of discretion. *Id.* at 6.

Finally, prior to this opinion, the District of New Hampshire had not defined the term "willful" in the context of a section 362 violation. In *Crysen*, 902 F.2d 1098, the Second Circuit refused to award legal fees because of what it called "the previously uncertain legal standard governing section 362(h)." This Court in the instant case believes that, to deny all legal fees in this case when the Defendant admitted generally knowing of the automatic stay, would be too harsh. However, the Court does believe that it is a factor to be considered in determining a reasonable award of costs and attorneys' fees.

Black defines "reasonable" as "Fair, proper, just, moderate, suitable under the circumstances. Fit and appropriate to the end in view." *Black's Law Dictionary* 1265 (6th ed. 1990). As noted above, the end in view in awarding actual damages, including costs and attorneys' fees for a willful violation of the automatic stay, is to deter further violations of the stay. In the instant case, the actual damages proven by the Plaintiffs are minimal. The complaint in the adversary proceeding was commenced on the same day notice of the bankruptcy was given to the Defendant. There is a question of whether the appeal by the Plaintiffs was properly preserved. Finally, there was no clear definition of "willful" adopted by this district against which the Defendant could evaluate its actions. Based on all of the above, this Court finds that the fees and expenses "suitable under the circumstances" and, thus, reasonable are attorneys' fees of $3,000.00 and reimbursable expenses of $540.38, which is the amount of expenses requested minus the charge for computer research.

A separate order shall issue in accordance with this memorandum opinion.