Fed'l Home Loan Mortgage v. McCormack CV-96-81-SD    08/29/96

UNITED STATES DISTRICT COURT FOR THE

                    DISTRICT OF NEW HAMPSHIRE


Federal Home Loan Mortgage
 Corporation, by its servicing
 agent, Chase Manhattan
 Mortgage Corporation

            v.                              Civil No. 96-81-SD

Paul McCormack


                         O R D E R


    Chase Manhattan Mortgage Corporation (Chase or CMMC), as

servicing agent for the Federal Home Loan Mortgage Corporation,

appeals from the decision of the bankruptcy court (Yacos, J.)

granting debtor Paul B. McCormack's motion for sanctions; finding

that CMMC's treatment of McCormack's escrow account constituted a

violation of the automatic stay, 11 U.S.C. § 362(a)(6); and

subsequently awarding attorney's fees and punitive damages

pursuant to 11 U.S.C. § 362(h).  McCormack additionally moves for

attorney's fees and costs in defending the present appeal.


                        Background

    On June 18, 1986, appellee Paul B. McCormack mortgaged the

sum of $88,000 in order to finance the acquisition of his home in

Hooksett, New Hampshire.  Some five years later, on May 17, 1991,

appellee filed for bankruptcy under Chapter 13 of the Bankruptcy Code.  The bankruptcy court approved the debtor's plan by confirming order in March 1992.

CMMC filed a Proof of Claim which included amounts for certain arrearages; namely, several pre-petition missed mortgage payments and two post-petition missed mortgage payments, but did not include any amounts for attorney's fees.  The March 1992 confirming order allowed CMMC's Proof of Claim in the amount of $8,500.  As an additional provision of the confirming order, CMMC was allowed $700 in attorney's fees relative to the foreclosure proceedings initiated as a result of appellee's delinquency in making mortgage payments in late 1990 to early 1991.  These amounts were to be paid pro rata over the term of the Chapter 13 plan by the Trustee.

## Discussion

### 1.  The Appeal

A district court's review of bankruptcy court proceedings is de novo as to rulings of law, but all factual findings will be accepted unless clearly erroneous.  See Jeffrey v. Desmond, 70 F.3d 183, 185 (1st Cir. 1995) (citing In re SPM Mfg. Corp., 984 F.2d 1305, 1311 (1st Cir. 1993); In re GSF Corp., 938 F.2d 1467,

2

1474 (1st Cir. 1991)); Bankr. Rule 8013.[1]

Appellant's arguments on appeal cast a wide net, but the nub of the argument can be summarized as follows: whether the bankruptcy court erred as a matter of law in ruling that certain of CMMC's activities constituted a willful violation of the automatic stay and whether the bankruptcy court erred in ruling that such willful violation served as a sufficient predicate to award attorney's fees to the debtor and assess punitive damages against CMMC.

The bankruptcy court found as follows:

> Notwithstanding the plan and the confirming order, and not withstanding the provisions of the Bankruptcy Code that give a debtor in Chapter 13 the power to cure pre-petition defaults, Chase for its own reasons continued to account this loan on the basis that the pre-petition default obligations were still matters that would show up as a negative amount in the escrow account. It was this decision by Chase in my estimation that

---

[1]This rule states,

> On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

Bankr. Rule 8013 (Supp. 1996).

> caused this entire course of action and dispute and controversy and numerous phone calls and letters back and forth, et cetera, that stemmed in the hearing before this court to eliminate the confusion created by Chase's decision to simply not comply with the requirements of the Bankruptcy Code and the confirming order in this case.
>
> In other words, Chase, notwithstanding the fact that the Bankruptcy Code cures the pre-confirmation defaults immediately upon the entry of the confirming order, elected to treat that as some kind of contingent thing that it would honor only when and if the Trustee actually made the payments to it. That is not the way any reorganization works under the Bankruptcy Code, whether it be Chapter 11 or Chapter 13 or Chapter 12. The important thing to know about bankruptcy law is that the defaults are cured ipso facto by the entry of the confirming order where they are provided for under the plan with payments to the Trustee to pay them out over time.

December 19, 1995, Transcript of Oral Argument before Judge Yacos

at 112-13. In consequence thereof, Judge Yacos ruled

> that Chase did violate the automatic stay by its accounting treatment with regard to this debtor and with regard to this loan by not bifurcating or separating out its accounting to take into account those items that are attributable pre-confirmation to the cure, which would require an account showing what the Trustee was doing or not doing from payments being made by the debtor and showing separately the status of the escrow account and the payment account as a regular monthly payment account, starting afresh from the point of confirmation so that the debtor was not bombarded by statements showing negative balances that required an inordinate amount of time by any borrower, let alone this Court, to thrash out and find out what was actually done.

Id. at 114.

4

The automatic stay provisions of the Bankruptcy Code, 11 U.S.C. § 362(a),[2] "were made part of the Code by the Bankruptcy Reform Act of 1978, to effect a temporary halt to all debt collection or enforcement proceedings until a court could reasonably assess the debtor's circumstances and make appropriate dispositive orders . . . ." Zeoli v. RIHT Mortgage Corp., 148 B.R. 698, 699 (D.N.H. 1993); accord Fish Market Nominee Corp. v. Pelofsky, 72 F.3d 4, 6 (1st Cir. 1995) ("Section 362(a) protects the estate of the debtor from adverse claims unless the court lifts the stay in particular instances, see 11 U.S.C. § 362(d),

---

[2]Such portions of said statute here relevant include:

> [A] petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of--
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;
> . . . .
> (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title . . . .

11 U.S.C. § 362(a)(1), (6) (1993 and Supp. 1996).

or unless such claims fall within codified exceptions not applicable here.").

> "The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

Zeoli, supra, 148 B.R. at 699 (quoting Notes of the Committee on the Judiciary, S. REP. No. 989, 95th Cong., 2d Sess. 54 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5840).

> The primary purposes of the automatic stay provisions are to effectively stop all creditor collection efforts, stop all harassment of a debtor seeking relief, and to maintain the status quo between the debtor and her creditors, thereby affording the parties and the Court an opportunity to appropriately resolve competing economic interests in an orderly and effective way.

Id. at 700.

"Maintaining the status quo is a repeating theme in decisions construing the automatic stay provisions." Id. (collecting cases). That noted, "[a]ctions taken in defiance of automatic stays have been treated as civil contempts, redressable as such to the injured parties." Martir Lugo v. De Jesus Saez (In re De Jesus Saez), 721 F.2d 848, 852 (1st Cir. 1983) (collecting cases).

6

The entire present course of conduct between CMMC and the debtor stems from, as the bankruptcy court so determined, the fact

> that Chase has continued to show a negative escrow balance that includes improperly the sum of $1,426.58 attributable to attorneys' fees either disallowed by the Court by virtue of its confirming order, or attorneys' fees in the amount of $700 that were to be paid under the plan over time.

December 19, 1995, Transcript at 115. CMMC attempted to rectify the negative escrow balance when, on October 31, 1994, it sent directly to McCormack "a demand . . . that [he] come up with $1,808 to remedy [the] shortfall in the escrow account within one month." Id. As a consequence of such demand, "the debtor had to litigate this matter to find out what Chase had actually done with his account and particularly the escrow account." Id. at 118.

Both in its brief and during oral argument, CMMC argues that the failure to credit the monies to McCormack's escrow account was not "an affirmative act against the Debtor or his property," Appellant's Brief at 13, but rather "a passive, internal 'non-event,'" id., or an "internal bookkeeping entr[y]," June 17, 1996, Transcript at 1, followed by "informational communications sent by Chase to the debtor," id. at 1-2. CMMC thus contends

7

that under the circumstances at bar the debtor herein has incurred a windfall due to, if error at all, CMMC's "negligible or technical violation of the stay." Id. at 2.

Despite the mantra-like repetition in its arguments, CMMC fails to persuade the court that its actions regarding the debtor's escrow account were merely "technical" or "negligible" internal bookkeeping matters. Quite to the contrary, CMMC treated debtor's negative escrow balance as a serious breach of his mortgage agreement, notwithstanding the March 1992 confirmation of the Chapter 13 Plan which was to give McCormack the benefit of a bankruptcy proceeding's "fresh start". CMMC apparently wanted its money, and it did not want to await the expiration of the confirmed plan in order to obtain same. Rather, it continued to dun the debtor, both with the October 31, 1994, demand for the $1,800 escrow shortfall and with continued recalcitrance to correct the monthly negative balance statements.

It is upon the present record that the court herewith finds and rules that the bankruptcy court did not err when it deemed CMMC's actions to be a breach of the automatic stay; specifically, 11 U.S.C. § 362(a)(6). CMMC's actions disrupted the status quo and, by virtue of the negative escrow balance hurdle, operated to McCormack's detriment.

8

Having determined CMMC's activity vis-à-vis McCormack's escrow account to constitute a breach of the automatic stay, the court next considers the twin issues of willfulness and damages.

Pursuant to 11 U.S.C. § 362(h), "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." "The words 'shall recover' indicate that Congress intended that the award of actual damages, costs and attorney's fees be mandatory upon a finding of a willful violation of the stay." Ramirez v. Fuselier (In re Ramirez), 183 B.R. 583, 589 (Bankr. 9th Cir. 1995) (citations omitted). Accord Nelson v. Taglienti (In re Nelson), 994 F.2d 42, 44 (1st Cir. 1993) (those "who take action against a bankruptcy estate without receiving the prior approval of the court or falling under one of the statutory exceptions are subject to [section 362(h)] sanctions").

> The test for determining whether a violation of an automatic stay is willful is: 1) whether the appellee knew of the stay and 2) whether appellee's actions, which violated the automatic stay, were intentional. Knowledge of the bankruptcy filing is the legal equivalent of knowledge of the automatic stay provided under § 362. Furthermore, in determining whether the violation was willful, it is irrelevant whether the party believed in good faith that it had a right to the property at issue. Not even a "good faith" mistake of law or a "legitimate dispute" as

9

> to legal rights relieve a willful violator of the consequences of his act.

Id. (internal quotations and citations omitted); see also Putnam v. Rymes Heating Oils, Inc. (In re Putnam), 167 B.R. 737, 740 (Bankr. D.N.H. 1994) (adopting two-prong test of Second, Third, Fourth, and Ninth Circuits for determining willful violations of automatic stay).

The bankruptcy judge's finding of a willful violation of the automatic stay was not clearly erroneous. CMMC, having filed a proof of claim, clearly knew of the debtor's bankruptcy. Moreover, CMMC's dunning was intentional.[3] See Maritime

---

[3]Contrary to CMMC's argument otherwise, the court does not view the efforts to charge the debtor's escrow account or accelerate its recovery of attorney's fees as either a technical violation of the stay or a request to reaffirm a pre-existing debt. As to the former, the court will not entertain legal niceties about whether a violation of the stay was merely "technical" or more opprobrious, for it constitutes a violation regardless of its moderating moniker. See Price v. United States (In re Price), 42 F.3d 1068, 1071 (7th Cir. 1994) (IRS notice of intent to levy, "albeit generated by a computer error, constituted a technical violation of the stay," which nonetheless satisfied the "willful violation" standard of 11 U.S.C. § 362(h)). With regard to the latter, although "'mere requests for repayment are not barred absent coercion or harassment by the creditor,'" In re Duke, 79 F.3d 43, 45 (7th Cir. 1996) (quoting Morgan Guaranty Trust Co. v. American Sav. & Loan, 804 F.2d 1487, 1491 & n.4 (9th Cir. 1986), cert. denied, 482 U.S. 929 (1987)), CMMC's communication to the debtor did not satisfy the statutory prerequisites attending to reaffirmation agreements, see 11 U.S.C. § 524(c)(2)(A)-(B) (Supp. 1996) (such agreements must contain "a clear and conspicuous statement which advises the debtor that the agreement may be rescinded at any time prior to discharge or within sixty days after such agreement is filed with the court, whichever occurs later, by giving notice of rescission

10

Asbestosis Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.), 112 B.R. 526, 530 (S.D.N.Y.) ("Section 362(h) . . . requires only general intent to take actions which have the effect of violating the automatic stay and not specific intent to violate the automatic stay."), rev'd on other grounds, 920 F.2d 183 (2d Cir. 1990). CMMC wanted to recover its attorney's fees and escrow costs from the debtor despite the terms of the plan confirmation or the breathing room afforded by the bankruptcy filing. See 5 FEDERAL PROCEDURE, L. ED. § 9:1163, at 800 (1991) ("A finding of willful violation is . . . appropriate where an initial violation of the stay is followed by the debtor's having to resort to the courts to enforce the debtor's rights." (footnote omitted)). Thus, CMMC's actions satisfy both prongs of the "willful violation" standard, and consequently "an award of damages to the injured individual is mandatory." Peters v. Mason-McDuffie Mortgage Corp. (In re Peters), 184 B.R. 799, 804

---

to the holder of such claim" and "a clear and conspicuous statement which advises the debtor that such agreement is not required under this title, under nonbankruptcy law, or under any agreement not in accordance with the provisions of this subsection"). Moreover, CMMC's citation to Jefferson v. G. Fox (In re Jefferson), 144 B.R. 620 (Bankr. D.R.I. 1992), and In re Freunscht, 53 B.R. 110 (Bankr. D. Vt. 1985), is inapposite on the facts of each, and "these disputes are definitely fact-specific," In re Jefferson, supra, 144 B.R. at 623. The reaffirmation attempts in each were singular incidents first directed to counsel for the respective debtors, two situations not here evident.

(Bankr. 9th Cir. 1995) (citation omitted); accord In re Putnam, supra, 167 B.R. at 741 ("Having found a willful violation of the automatic stay, the Court has no alternative but to award actual damages, including costs and attorney's fees pursuant to section 362(h).").

"The same standard applies to a review of [a bankruptcy judge's] award of damages" as to the findings of fact. Shimer v. Fugazy (In re Fugazy Express, Inc.), 124 B.R. 426, 430 (S.D.N.Y. 1991) (citing In re B. Cohen & Sons Caterers, Inc., 108 B.R. 482 (E.D. Pa. 1989), appeal dismissed, 982 F.2d 769 (2d Cir. 1992)). That is, the bankruptcy judge's damages award will "stand unless found by the district court to be clearly erroneous." Id. (citation omitted). To the extent that the damages awarded represent the expenses caused by the creditor's willful violation of the stay and costs and attorney's fees relative to the resultant litigation, an award under such circumstances would not be clearly erroneous. Id. at 431.

With 11 U.S.C. § 362(h), "Congress established a remedy for an individual injured by a willful violation of a section 362(a) stay." Pettitt v. Baker, 876 F.2d 456, 457-58 (5th Cir. 1989) (footnote omitted). CMMC argues that McCormack did not suffer any injury--read, no assessment of penalties, institution of foreclosure proceedings, withholding of services, or out-of-

12

pocket costs--and thus is not entitled to an award under section 362(h). However, if for nothing else, "section 362(h) authorizes damages in the form of attorneys' fees incurred by a debtor asserting its automatic stay rights . . . up to the moment of a motion to correct the violation even if there are no damages apart from attorneys' fees." In re Chateaugay Corp., supra, 112 B.R. at 534. "In addition, there are cases which have established the appropriateness of an award of attorneys' fees incurred by a debtor in connection with its assertion of its rights under the automatic stay provision." Id. (collecting cases).

In addition to the attorney's fees and costs incurred in enforcing the stay, McCormack presented evidence and was awarded $3,600 as compensatory damages

> for time and effort he expended to get this matter cleared up over some three or four years in the face of responses that were not forthcoming from the lender in any meaningful way by virtue of incomprehensible accounting print-outs and statements and letters containing various words of art only now explained by the lender and letters and accounting print-outs that had codes on them that were not always fully explained to the debtor.

December 19, 1995, Transcript at 127. "The plain language of [section 362(h)] requires that the injured party be awarded the entire amount of actual damages reasonably incurred as a result of a violation of the automatic stay." Stainton v. Lee (In re

13

Stainton), 139 B.R. 232, 235 (Bankr. 9th Cir. 1992); see also In re Mullarkey, 81 B.R. 280, 284 (Bankr. D.N.J. 1987) ("where willful violation of the stay is demonstrated, compensatory damages are mandatory."). However, "[a]ctual damages for purposes of section 362(h) should only be awarded if there is evidence supporting the award of a definite amount . . . ." In re Sumpter, 171 B.R. 835, 844 (Bankr. N.D. Ill. 1994). Although "[a] party seeking damages must prove them using methodologies that need not be intellectually sophisticated . . . a damage award cannot be based on mere speculation, guess or conjecture." Id. (citations omitted).

The record before the court documents the time and effort expended by McCormack in ultimate pursuit of an adequate explanation of his mortgage history and negative escrow balance. In addition to an abundance of correspondence to CMMC and various banking regulatory agencies, McCormack has submitted telephone records representing nearly 11-3/4 hours worth of telephone calls, not including those dialed toll-free, placed between the years 1992 and 1994. Moreover, the record is thick with McCormack's handwritten notes representing his efforts to make sense of what CMMC was sending to him. To the extent that the bankruptcy judge awarded McCormack, as damages, his "expenses caused by the creditor's willful violation of the stay," the

14

court finds that "an award under such circumstances [is not] clearly erroneous." In re Fugazy Express, Inc., supra, 124 B.R. at 431.

Moreover, "[s]ection 362(h) expressly contemplates the award of reasonable costs and attorney's fees to injured individuals." In re Sumpter, supra, 171 B.R. at 845. "The Debtor is entitled to an award of . . . attorney's fees incurred in the prosecution of this motion," id. (citation omitted), however, attorney's fees awarded under section 362(h) are to be "tempered . . . by a reasonableness standard," In re Putnam, supra, 167 B.R. at 741 (citations omitted). The bankruptcy court's fee award is without error.[4]

Punitive damages, however, "will be awarded only if a defendant's conduct was malicious, wanton or oppressive." In re Ramirez, supra, 183 B.R. at 590 (citations omitted). The imposition of punitive damages herein will follow if CMMC's actions constitute an "'intentional abuse of legal power and a deliberate and arrogant defiance of federal bankruptcy law.'" Id. (quoting Sansone v. Walsworth (In re Sansone), 99 B.R. 981, 990 (Bankr. C.D. Cal. 1989)); see also Goichman v. Bloom (In re

---

[4]The court notes, moreover, that the bankruptcy court had the discretion, although seemingly not executed, to award attorney's fees pursuant to 11 U.S.C. § 105(a). See Havelock v. Taxel (In re Pace), 67 F.3d 187, 193 (9th Cir. 1995).

15

<u>Bloom)</u>, 875 F.2d 224, 228 (9th Cir. 1989) (noting the traditional reluctance "to grant punitive damages absent some showing of reckless or callous disregard for the law or rights of others" (citation omitted)).

"Any creditor or agent that continues collection or enforcement actions after notice of a bankruptcy filing acts at its peril.  Intentional acts in knowing disregard for the automatic stay subject the violator to compensatory and punitive damages."  <u>In re Ramirez</u>, <u>supra</u>, 183 B.R. at 591 (Fenning, J., concurring); <u>accord</u> <u>Kearns v. Orr (In re Kearns)</u>, 168 B.R. 423, 425 (D. Kan. 1994) ("If there is any uncertainty as to whether the automatic stay applies, the prudent practitioner should petition the court for clarification." (citations omitted)).

The imposition of attorney's fees "constitute[s] compensatory damages which make an award of punitive damages appropriate."  <u>In re Sumpter</u>, <u>supra</u>, 171 B.R. at 845 (citing <u>In re Baker</u>, 140 B.R. 88, 90 (D. Vt. 1992)).  Unlike an award of actual damages, any award for punitive damages is within the sound discretion of the court.  <u>See</u> <u>Davis v. IRS</u>, 136 B.R. 414, 423 n.20 (E.D. Va. 1992).  "Relevant factors which may be considered in determining whether punitive damages are appropriate for a creditor's violation of the automatic stay are: (1) the nature of the creditor's conduct; (2) the creditor's

16

ability to pay damages; (3) the motive of the creditor; and (4) any provocation by the debtor." In re Sumpter, supra, 171 B.R. at 845 (citation omitted).

"Appropriate circumstances" sufficient to warrant the imposition of punitive damages have been generally limited to "'egregious, intentional misconduct on the violator's part . . . .'" Lovett v. Honeywell, Inc., 930 F.2d 625, 628 (8th Cir. 1991) (quoting United States v. Ketelsen (In re Ketelsen), 880 F.2d 990, 993 (8th Cir. 1989)); In re Sumpter, supra, 171 B.R. at 845 ("Punitive damages are awarded in response to particularly egregious conduct for both punitive and deterrent purposes." (citations omitted); Davis, supra, 136 B.R. at 424 ("only egregious or vindictive misconduct warrants punitive damages for willful violations of the automatic stay . . . . ").

As part of the punitive damage award, the bankruptcy judge made the following findings:

> the Court is of the mind that notwithstanding the number of people involved by Chase in dealing with the lender, there had to be a conscious decision somewhere in Chase -- Chase's employ -- to continue to show the cured items as live items under the negative escrow balance rather than honor the effective Chapter 13 in curing those items through the plan, and that that conscious decision deserves the imposition of punitive damages in this case.

December 19, 1995, Transcript at 127-28. Later in his oral findings, however, the judge stated,

17

> In the present case on behalf of Chase it can be said that while incomprehensible, they did try to give accountings to the debtor that if understood would have explained what they were doing and that in that sense they were not hiding their disobedience of the plan and confirming order. It also appears from a review of the manifold documents prepared by Chase not only prior to this motion and hearing but in response to the debtor that Chase itself sometimes didn't understand its own print-outs and had to correct errors numerous times. While that was annoying to the debtor, it probably is attributable more to lack of organization and/or skills in the personnel involved than any malevolent purpose to defeat the rights of the debtor. Moreover, I do find from this record that at least in the later stages there was a game of sorts going on between the debtor and Chase dancing around these various disclosures, perhaps positioning the debtor to bring this motion. There are large periods of time with no commotion going on, and then the debtor coming back with repeated questions about things that he had asked two or three years before.

Id. at 128-29.

Such findings denote a degree of inconsistency which compels the court to vacate the punitive damages portion of the prior order and remand this issue to the bankruptcy court for further, more specific, findings regarding same.

2. Appellee's Motion for Fees and Costs

Over appellant's objection, appellee McCormack moves under 11 U.S.C. § 362(h) for an award of further attorney's fees and costs, this time as recompense for defending the appeal. Because

18

the court finds that CMMC's appeal is not frivolous, <u>see</u> Rule 38, Fed. R. App. P.,[5] and appeal from the bankruptcy court is permitted as of right, <u>see</u> <u>Roete v. Smith (In re Roete)</u>, 936 F.2d 963, 967 n.6 (7th Cir. 1991), such motion is herewith denied.

Conclusion

For the reasons set forth herein, the decision of the bankruptcy court is affirmed in part and vacated in part. The award of punitive damages is vacated and the issue remanded to the bankruptcy court for further proceedings consistent with this order. Appellee's motion for attorney's fees and costs (document 11) is denied.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

August 29, 1996

cc: Michael F. Gaffny, Esq.
Julia G. Altman, Esq.
Lawrence P. Sumski, Esq.
George Vannah, Clerk

_____

[5]Such Rule states,

> If a court of appeals determines that an appeal is frivolous, it may, after a separately filed motion or notice from the court and reasonable opportunity to respond, award just damages and single or double costs to the appellee.

19